PAYNE *et al. v.* HOME SAVINGS BANK, administrator.

No. 13910.   JANUARY 13, 1942.   REHEARING DENIED FEBRUARY 13, 1942.

*Joseph O. McGehee,* for plaintiffs. *Theo. J. McGee,* for defendant.

ATKINSON, Presiding Justice. The Code, § 38-118, among other stated prima facie presumptions, lists "continuance of life for seven years." Under this provision and the rule which exists generally, one who has been absent from his accustomed place of abode, unheard from, for seven years is presumed to be dead, and in the absence of proof to the contrary his death is presumed to have occurred at the end of the seven-year period. *Hansen* v. *Owens,* 132 *Ga.* 648 (64 S. E. 800); *Gantt* v. *American National Insurance Co.,* 173 *Ga.* 323 (160 S. E. 345). At the end of the seven years the ordinary has power to appoint an administrator of the estate of the person who has been so absent and unheard from. *Adams* v. *Jones,* 39 *Ga.* 479 (4). However, the ordinary has no jurisdiction to appoint an administrator of the estate of a living person; and if the one who has been absent and unheard from is in

fact alive, the appointment is void. *Bank of Jonesboro* v. *Wilson,* 43 *Ga. App.* 839 (160 S. E. 653), and cit.

From the above it follows that Dixon was presumed to be dead in September, 1936, and at that time, had he been sui juris, it would have been proper for an administrator of his estate to be appointed. But under the allegations here, in September, 1936, he would still have been an infant, twenty years of age, and as a guardianship for him then existed, the situation would be governed by the Code, § 49-316: "When a ward shall die intestate, pending his minority, the guardian shall proceed to distribute his estate in the same manner as if he had been appointed administrator upon such estate, and the sureties on his bond shall be responsible for his faithful administration and distribution of such estate." This section by its terms applies where the ward dies "pending his minority," but does not apply where the ward dies after he has attained majority. *Morgan* v. *Woods,* 69 *Ga.* 599 (3). In such latter case the guardian would not become ex-officio administrator, with power to administer the estate of the deceased ward.

The petition now before the court alleges as a fact that petitioners are heirs of Dixon and are entitled to share in his estate. They can not take as "heirs" and thus be entitled to participate in the distribution of the estate, unless Dixon died intestate. The allegations are tantamount to an assertion that Dixon died intestate during his minority. Therefore the Code, § 49-316, is applicable. This section was codified from the act of 1858, and from its provisions it is clear that the legislature did not intend that, upon the death of the ward during minority, there should be a separate proceeding with an order of appointment from the ordinary. That is not required. The statute operates automatically. When the ward dies intestate during minority, the guardian ipso facto takes on the character of an administrator or becomes ex-officio administrator, acting under the bond originally given; and the only duty thereafter required of him is administration of the estate, which after payment of debts would include distribution among those entitled under the laws of inheritance to receive the estate.

In Scott *v.* McNeal, 154 U. S. 34 (14 Sup. Ct. 1108, 38 L. ed. 896), it was held: "A court of probate, in the exercise of its jurisdiction over the probate of wills and the administration of estates of deceased persons, has no jurisdiction to appoint an administrator

of the estate of a living person; and its orders, made after public notice, appointing an administrator of the estate of a person who is in fact alive, although he has been absent and not heard from for seven years, and licensing the administrator to sell his land for payment of his debts, are void, and the purchaser at the sale takes no title, as against him. A judgment of the highest court of a State, by which the purchaser, at an administrator's sale under order of a probate court, of land of a living person, who had no notice of its proceedings, is held to be entitled to the land as against him, deprives him of his property without due process of law, contrary to the fourteenth amendment of the constitution of the United States, and is reviewable by this court on writ of error." In the opinion the court quoted approvingly this statement: "It is not competent for a State, by a law declaring a judicial determination that a man is dead, made in his absence, and without any notice to or process issued against him, conclusive for the purpose of divesting him of his property and vesting it in an administrator, for the benefit of his creditors and next of kin, either absolutely or in favor of those only who innocently deal with such administrator. The immediate and necessary effect of such a law is to deprive him of his property without any process of law whatever, as against him, although it is done by process of law against other people, his next of kin, to whom notice is given. Such a statutory declaration of estoppel by a judgment to which he is neither party nor privy, which has the immediate effect of divesting him of his property, is a direct violation of this constitutional guaranty."

In Cunnius v. Reading School District, 198 U. S. 458 (25 Sup. Ct. 721, 49 L. ed. 1125, 3 Ann. Cas. 1121), it was stated: "The right to regulate concerning the estate or property of absentees is an attribute which in its very essence belongs to all governments, to the end that they may be able to perform the purposes for which government exists. . . Where the provisions of a State statute for administration on the assets of an absentee are reasonable as to the period of absence necessary to create the presumption of death, and create proper safeguards for the protection of his interests in case the absentee should return, it does not violate the due-process clause of the fourteenth amendment because it deprives the absentee of his property without notice." In that case the court had under consideration a statute of Pennsylvania, providing for the

issuance of letters of administration of the estates of persons presumed to be dead by reason of absence for seven or more years. Power was conferred on the orphans' court to revoke the letters at any time on proof that the absentee was in fact alive, the effect of the revocation being to withdraw all powers conferred by the grant of administration. It was further provided that before distribution of the estate of the supposed decedent should be made, the distributees should give security in such sum as the court should direct, conditioned that if the absentee "shall, in fact, be at the time alive, they will, respectively, refund the amounts received by each on demand, with interest thereon, but if the person or persons entitled to receive the same is or are unable to give the security aforesaid, then the money shall be put at interest on security approved by said court, which interest is to be paid annually to the person entitled to it, and the money to remain at interest until the security aforesaid is given, or the orphans' court, on application, shall order it paid to the person or persons entitled to it." The court, after stating, "Let it be conceded that if a State law, in providing for the administration of the estate of an absentee, contained no adequate safeguards concerning property, and amounted therefore simply to authorizing the transfer of the property of the absentee to others, that such a law would be repugnant to the fourteenth amendment," held the statute valid, thereby indicating that the safeguards set out in the statute were sufficient.

In Georgia there is no statute which corresponds to the Pennsylvania statute which was under consideration in the case last cited. The courts of this State have recognized the existence of the presumption of death arising from seven years absence and have ruled that such presumption, when proved to exist, would authorize the granting of letters of administration, but there is no decision in Georgia indicating what safeguards should be set up in favor of the absentee, to protect him in the event of his return, before a judgment should issue permitting the administrator to distribute his property. Yet from the above cited decisions of the Federal court it is clear that if no such safeguards were set up by judgment the result would be an invasion of the rights of the absentee under the due-process clauses.

The contentions now presented are very clear. The defendant (guardian) insists that should it be required to distribute Dixon's

estate among his presumed heirs and Dixon should later appear, he would be entitled to maintain a claim against the defendant for his property, and that the defendant would not be protected by the payments to the heirs. On the other hand the question is asked, if the petitioners are really the heirs, and if Dixon really is dead (as they claim he is presumed to be), can the defendant be permitted to retain possession of the property indefinitely merely because petitioners are unable to present concrete evidence of the fact of death? And this with the presumption referred to now operating fully in their favor?

The situation must be dealt with, having due consideration for the rights of all concerned. On the one hand are the rights of the heirs, who presumably now own the property and are entitled to have it distributed to them; on the other hand is the reciprocal right of the defendant to be fully protected, in making the distribution, against the possibility of Dixon's return alive. Also, the sureties on the defendant's present bond are entitled to protection. Each right is definite, and for each a remedy must be found. "For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other." Code, § 3-105. "A court of equity shall have concurrent jurisdiction with the ordinary over the settlement of accounts of administrators." § 113-2203. "Whatever may be the remedies that have been provided by statute against administrators, the concurrent jurisdiction of equity over the settlement of accounts of administrators is specially retained by the above section of the Code." *Howard* v. *Boone,* 170 *Ga.* 156 (152 S. E. 462). See also *Terry* v. *Chandler,* 172 *Ga.* 715 (2, 3) (158 S. E. 572); *Robinson* v. *Georgia Savings Bank & Trust Co.,* 185 *Ga.* 688, 694 (196 S. E. 395). The case at bar is in equity, and complete justice must be done. It is not a case where a distribution and an accounting had already begun or had even been applied for in the court of ordinary, and hence, instead of invoking equity protection to interfere with the regular administration of the estate, the petition sought to enforce due and regular administration thereof in a manner provided by law. *Terry* v. *Chandler,* supra. The superior court in the exercise of equitable jursidiction has power to mold its decree so as to meet the exigencies of the particular case under consideration. Code, §§ 37-1203, 85-1502. Although there is no such statute in this State as in

Pennsylvania, as dealt with in Cunnius v. Reading School District, supra, the Code sections set forth above have the effect of statutes and afford ample legal machinery for the court of equity to protect the interest of the absentee (if in fact he be yet alive), without any violation of the constitutional guaranty of due process of law. The court of ordinary would not have such power.

In Donovan v. Major, 253 Ill. 179 (97 N. E. 231), the fifth headnote is as follows: "Where administration is granted upon a petition setting up the facts upon which the legal presumption of death arises, any decree which may be rendered requiring the trustees of such absent person to pay over the fund to the administrator should require security for the indemnification of the trustees against loss by reason of any claim or demand of the absent person or any person claiming through or under him." In the instant case an indemnification similar to that referred to in the Donovan case will protect all parties involved. In this connection see Kent v. Davis, 89 Ga. 151 (15 S. E. 457).

As bearing generally on the questions here involved see 23 C. J. 1007, § 30; 16 C. J. S. 1219, § 609; 25 C. J. S. 1054, § 6; Jennings v. Longino, 177 Ga. 591, 600 (170 S. E. 806); Mutual Life Insurance Co. v. Dickens, 44 Ga. App. 429 (161 S. E. 657); Metropolitan Life Insurance Co. v. Polk, 56 Ga. App. 310 (192 S. E. 472). As to the proof required to establish the existence of the presumption of death arising from absence for seven years, see Hansen v. Owens, supra; Rudulph v. Brown, 150 Ga. 147 (103 S. E. 251). As to the history of the rule see remarks of Thompson, J., in Steen v. Modern Woodmen of America, 296 Ill. 104 (129 N. E. 546, 17 A. L. R. 406, 413-414).

Sufficient has been said to distinguish the instant case (in which the absentee by his guardian or ex-officio administrator was a party) from Jones v. Gann, 184 Ga. 722 (193 S. E. 174) where it was held: "A suit can not be maintained by the distributees of an estate to recover personal property belonging to such estate, except through a legal representative, in the absence of special circumstances authorizing such a proceeding in equity." This statement is made in reply to the contention of counsel for the defendant that these petitioners could proceed only through an administrator, duly appointed, of Dixon's estate. Under the comprehensive provisions of the Code, § 49-316, there is no necessity for a formal appoint-

ment of an administrator. A fully qualified representative of the estate is now before the court in the person of the guardian defendant. It was erroneous to dismiss the action on general demurrer. *Judgment reversed. All the Justices concur.*