## 29818. CALDWELL v. INSURANCE COMPANY OF NORTH AMERICA.

HALL, Justice.

This appeal raises the question whether the Insurance Commissioner was correct in prohibiting the use of certain increased automobile insurance premium rates on the ground that the insurance company in establishing the rates did not give adequate consideration to the likelihood that the "energy crisis" would significantly reduce insured losses.

Insurance Company of North America ("INA") in June, September, and October, 1973, filed with the Insurance Commissioner of Georgia a revised set of premium rates for its Champion Family Automobile Program, reflecting an overall premium increase of 6.4 percent. The rates were to apply to automobile policies covering losses in 1974 and 1975. The predictive "trend factors" used by INA in establishing these rates were based upon data compiled from January 1, 1969, through September 30, 1972.

The national "energy crisis" was apparent in

October, 1973, and appeared to presage fuel shortages, less driving, and lower speed limits, all arguably tending toward fewer and less disastrous automobile accidents. In November, 1973, the Commissioner directed his staff to request all companies filing rates since October 1 to reconsider those rates in light of the energy crisis. All companies requested to do so withdrew their rates, except INA.

On December 20, 1973, pursuant to Code Ann. § 56-528 the Commissioner wrote to INA directing it to comply with Code Ann. § 56-507 (b) requiring that consideration in setting rates be given to *prospective* loss experience. The Commissioner wrote that INA's trend factors ending in 1972 could not reflect the prospective effect of the "National 'energy situation.' " INA refused to comply as directed, though it devised a "return of premium" plan, the adequacy of which is not seriously suggested here. It implemented its new rates on January 1, 1974.

The Commissioner then issued a show cause order pursuant to Code Ann. § 56-529, setting a hearing on January 25, 1974, to consider whether INA's new rates violated Code Ch. 56-5. The hearing was held, following which the Commissioner on March 5, 1974 issued an order ruling that INA had failed to consider the energy crisis and thus failed to comply with Code Ann. § 56-507 (b). The rates were ruled illegal and INA was ordered to make refunds to policyholders, plus interest.

INA then filed in Fulton Superior Court a 2-count complaint, seeking in Count 1 injunctive relief against enforcement of the Commissioner's order, and in Count 2 judicial review thereof pursuant to Code Ann. § 56-227. Following an evidentiary hearing in superior court, the transcript of which is not before us, that court issued a short order ruling the Commissioner's order illegal and void, reversing it, and granting INA the complete relief it sought. This is the Commissioner's appeal from that order.

The central issue in this case is whether the Commissioner correctly ruled that INA failed to "consider" the energy crisis within the meaning of Code Ann. § 56-507(b). INA strongly contends that it considered all known aspects of the situation, though it

ultimately decided that data was too sparse and too conflicting to permit the energy crisis to be worked into prospective loss figures. It is unnecessary to recount INA's testimony at the hearing before the Commissioner, for we find its evidence concisely summarized in its brief here: "After consideration of all such [energy crisis] factors, INA determined that there was no reliable statistical data available upon which to determine an accurate trend or to project the effect of an 'energy crisis' on prospective loss experience in Georgia. The 'energy crisis' began in October, 1973. Between that time and January 1, 1974, no statistical data or objective criteria had been determined as to the effect that situation might have on future automobile loss experience. Based upon the foregoing considerations INA determined to retain its revised rates. . ." (Citations to record omitted.)

The Commissioner's evidence at the hearing, on the other hand, showed that prior to INA's final amendment to the filing on January 22, 1974, the State Department of Transportation had, and made available to the public, figures showing a decrease in highway traffic in the state from 1972 to 1973. The Deputy Commissioner of the Department of Public Safety testified that contrasting automobile collision frequency from November, 1972 through January, 1973 with November, 1973 through January, 1974 showed a significant reduction in the numbers of accidents, deaths and injuries, and that he thought the reduction was attributable to the energy crisis. INA did not consider any of this Georgia data. A consulting actuary retained by the state testified that "I did not feel that [INA] trend factors developed in data from 1966 to '72 was appropriate to use for accidents that were going to occur in 1974 and 1975, in view of what we knew was going on in November [the energy crisis]." Additionally, there was evidence at the hearing that effective January 17, 1974, the Cost of Living Council froze private passenger automobile rates for 60 days because of the Council's estimate of the likely effects of the energy crisis; and the National Association of Insurance Commissioners had established a task force to study its effects on automobile insurance rates. There was also testimony that all insurance companies other than INA

had either requested no increase since October, 1973, or had withdrawn the requests for increases, and that for the entire year 1973 there were 59 decreases.

It is clear that hard data on the exact effect the energy crisis might be expected to have on insured losses was not ample and was not free of conflict. Nonetheless, our review of the record shows that there was substantial evidence upon consideration of the record as a whole supporting the finding of the Commissioner that INA had failed to consider, to the extent applicable, prospective loss experience within and outside the state, within the meaning of § 56-507 (b) of the Georgia Insurance Code. We assume that it hardly needs to be said that merely considering data before rejecting its import will not satisfy the statute when it is plain that the factors being considered are quite significant, are generally recognized as such, may be expected to continue over a long period, and are capable of being figured in some manner into prospective loss experience. The record made before him supported the Commissioner's decision that the rates were illegal under the "substantial evidence" test of Code Ann. § 56-227 (1) (c). Because we rule that standard was met, it is unnecessary to consider the Commissioner's argument here that a less stringent "reasonable evidence" standard was signaled by this court in *South-Eastern Underwriters Assn. v. Cravey,* 216 Ga. 599, 601 (118 SE2d 471) (1961).

Under Code Ann. § 56-227 (1) (b), the superior court in reviewing the merits of the Commissioner's ruling is limited to the pleadings and the record made before the Commissioner. We have that record. Therefore, there is no merit in INA's claim here that we must affirm for absence of a transcript of any additional evidence placed before the superior court.

INA additionally argues that the Commissioner may not void its rates after finding that it failed to consider prospective loss experience in compliance with Code Ann. § 56-507 (b), unless he additionally finds that the rates are excessive, inadequate or discriminatory under Code Ann. § 56-507 (a), and no such finding was made. The argument is that sections (b) through (e) of the statute merely describe elements the Commissioner may examine in

deciding whether the rates comport with the sole pertinent test, which is that of section (a). We reject this argument.

If the legislature had intended INA's result, it could have continued enumerating rules in the vein of the numbered subparts of section (a), which describe tests for excessiveness and inadequacy. But it did not do this; instead, it labeled the standards set forth in sections (b) through (e) with a denomination equal in dignity to (a), implying that they are themselves standards to be applied independently of (a), as foretold by the statute's opening reference to "the following standards . . ." Finally, section (e), referring to unfair trade practices, is nonsensical if read merely as a characteristic of excessiveness, inadequacy or discrimination.

We rule that sections (a) through (e) list different standards, for violation of any one of which the Commissioner may prohibit use of rates.

INA's contentions that the Commissioner's order so unfairly singled it out for repression as to violate its due process and equal protection rights; that it received constitutionally inadequate notice of the proceedings against it before the Commissioner; that the Commissioner admitted the illegality of his order through a pleading oversight in superior court; and that the Commissioner's order is void because it did not issue within 30 days of the hearing as required by Code Ann. § 56-224, are all without merit.

INA correctly argues that the Commissioner has authority only to prohibit the use of rates, and not to order refunds of premiums already collected under rates subsequently prohibited. *Allstate Ins. Co. v. Bentley,* 122 Ga. App. 738, 750 (178 SE2d 700) affd. as to this count in *Bentley v. Allstate Ins. Co.,* 227 Ga. 708, 712 (18 SE2d 770). It follows that the Commissioner was without authority to order INA to make refunds of increased rates collected prior to the effective date of the prohibition — March 20, 1974 — as required by the last paragraph of his order; and the superior court did not err in granting INA the legal and equitable relief sought from that portion of the order.

The injunction feature of this case introduces an

issue now mainly spurious. The record does not indicate that any injunction issued prior to the superior court's determination on the merits that the Commissioner's order was void. We now uphold all of the Commissioner's order except that portion requiring the aforementioned refunds to policyholders. Of course, the immediately preceding paragraphs of the order containing a prohibition against the use of the challenged rates after March 20, 1974, was fully authorized; and INA is not authorized to retain any such rates collected after that date. We reverse all of the superior court's ruling except the portion invalidating the improper refund requirement. It follows that the superior court's injunction against enforcement of the valid portion of the Commissioner's order was erroneous.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Gunter, J., who dissents.*

ARGUED APRIL 15, 1975 — DECIDED SEPTEMBER 2, 1975 —
REHEARING DENIED SEPTEMBER 16, 1975.

*Arthur K. Bolton, Attorney General, H. Andrew Owen, Assistant Attorney General,* for appellant.

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin,* for appellee.

GUNTER, Justice, dissenting.

I am of the opinion that under the Georgia Insurance Code the Insurance Commissioner can prohibit the implementation of filed insurance rates only if he finds such rates to be excessive, inadequate, discriminatory, or violative of Chapter 56-7 of the Georgia Insurance Code relating to unfair trade practices.

In this case the Insurance Commissioner attempted to prohibit the implementation of the filed rates merely for the reason that the insurer failed to give consideration to the impact of the "energy crisis" in arriving at its rates to be charged policyholders effective January 1, 1974. The Insurance Commissioner made no finding that the filed rates were excessive, inadequate, discriminatory, or violative of Chapter 56-7 relating to unfair trade

practices.

I think the Insurance Commissioner must find one of these four elements to exist before he can prohibit the implementation of rates filed with him. To hold that the Insurance Commissioner can prohibit the implementation of rates just because the rate-maker did not take some clear or nebulous factor into consideration in devising the rates, without a further finding that because of this deficiency the rates are excessive, inadequate, or discriminatory, is, in my opinion, a disservice to the public, insurers, and the office of the Commissioner.

Although Code Ann. § 56-507 is entitled "Standards Applicable To Rates," it is clear to me that the first sentence of subsection (a) does not set forth a standard. It clearly enunciates a prohibition. Subsection (e) likewise, as I read it, does not set forth a standard. It establishes a prohibition.

The second and third paragraphs of subsection (a) and all of subsections (b), (c), and (d), as I read them, establish standards.

I think the standards were devised and written to enable the rate-maker, the Commissioner, and the judiciary to determine whether the filed rates are excessive, inadequate, discriminatory, or constitute unfair trade practices. In other words, filed rates can be prohibited only if they conflict with one of the four prohibitions.

Since the Insurance Commissioner's order did not hold the filed rates in conflict with at least one of these four statutory prohibitions, I think his order was illegal and was properly so held by the trial court.

It follows that I would affirm the judgment below.

I respectfully dissent.