554 A.2d 618

John Hancock Property & Casualty Insurance Company and John Hancock Indemnity Company, Petitioners *v.* Commonwealth of Pennsylvania, Insurance Department, Respondent.

Argued November 2, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, COLINS, PALLADINO and SMITH.

S. *Walter Foulkrod, III*, with him, *Stephen L. Banko, Jr., Foulkrod, Reynolds & Havas, P.C.*, for petitioners.

*Jean M. Callihan*, Assistant Counsel, with her, *Arthur Selikoff*, Assistant Counsel, *Theodie L. Peterson, III*, Chief of Litigation, and *Linda J. Wells*, Chief Counsel, for respondent.

OPINION BY JUDGE BARRY, February 23, 1989:

John Hancock Property & Casualty Insurance Company and John Hancock Indemnity Company (petitioners) appeal from an order of the Insurance Commissioner (Commissioner) which disapproved their rate filing for

private passenger automobile coverage and required them to refund a portion of the rate increase they had collected on policies that were issued or renewed while the disapproved rates were in effect.

The filing was made on October 28, 1987 with a request for the proposed rates to become effective December 1, 1987. It was made under the provisions of the Casualty and Surety Rate Regulatory Act (Act), Act of June 11, 1947, P.L. 538, *as amended,* 40 P.S. §§1181-1197. The filing proposed an overall rate level increase of 15.4%. Three days after the expiration of the initial thirty days of the waiting period within which the filing was required to be on file before it became effective by operation of law, the Commissioner, by letter dated November 30, 1987, notified the petitioners that, pursuant to Section 4(d) of the Act, 40 P.S. §1184(d), she was extending the waiting period by an additional thirty days.[1] Three days after the expiration of that additional thirty day period, Deputy Insurance Commissioner Michael Powers, by letter dated December 31, 1987, notified the petitioners that, pursuant to Section 5(a) of the Act, 40 P.S. §1185(a), a hearing would be held on February 17, 1988 to review their rate filing. Petitioners subsequently notified the Commissioner that, beginning on January 22, 1988, they would begin charging the rates proposed in their filing, which had become effective by operation of law, and proceeded to do so.

Following the hearing on the petitioners' rate filing, the Commissioner issued an order which disapproved that filing effective April 15, 1988.[2] The Commissioner

---

[1] This notice should not have extended the waiting period because it was not issued within the initial thirty days of that period, as required by Section 4(d) of the Act. Petitioners, however, agreed to an extension of the waiting period despite this procedural defect.

[2] Initially, the disapproval of the rate filing was to be effective April 8, 1988. The Department and the petitioners, however, en-

concluded that the proposed rates were excessive. By this same order, the Commissioner required the petitioners to return within thirty days of the date of the order "all excess premium collected." Petitioners applied to the Commissioner for a stay of that part of her order. That application was denied. In her order denying the application, however, the Commissioner now interpreted the portion of the order which petitioners sought to stay to require the petitioners to return only "the premium difference between its rates deemed into effect January 22, 1988 and its previouslv approved rates for all premiums earned after April 15, 1988, the effective date of the disapproval of the deemed rate." This appeal followed.[3]

In this appeal, petitioners had raised a series of issues relating to that part of the Commissioner's order which disapproved their October 28, 1987 rate filing.[4] Subse-

---

tered into a stipulation whereby they agreed that the Commissioner's order should be modified so that the disapproval of the proposed rates would be effective April 15, 1988 because the order had not been served upon the petitioners until April 7, 1988.

[3] On June 6, 1988, President Judge CRUMLISH granted petitioners' application for stay of the part of the Commissioner's order requiring them to refund the specified portion of the rate increase collected without requiring the posting of security.

[4] Their specific contentions were as follows:

(1) the Commissioner improperly placed on them the burden of proving that the proposed rates that were deemed into effect by operation of law were not excessive rather than requiring the Department to prove that said rates were excessive;

(2) the Commissioner improperly rejected the loss development factors they had selected;

(3) the Commissioner improperly rejected the trend factors they had selected;

(4) the Commissioner improperly rejected their calculations of investment income;

(5) the Commissioner's order required them to use those rates for private passenger automobile insurance established by the Insurance Services Office, a rating organi-

quent to the filing of this appeal, however, the petitioners, both foreign corporations, surrendered their certificates of authority to do business in the Commonwealth. Without such certificates, they can no longer lawfully do business in the Commonwealth. Act of May 17, 1921, P.L. 789, *as amended,* 40 P.S. §46. Consequently, their challenge of the portion of the Commissioner's order disapproving their rate filing is rendered moot. Because the issues relevant to the disapproval of the rate filing are not ones which are capable of repetition yet evading review, we do not address them.

However, the petitioners also challenge in this appeal that portion of the Commissioner's order which requires them to refund "the premium difference between its rates deemed into effect January 22, 1988 and its previously approved rates for all premium earned after April 15, 1988, the effective date of the disapproval of the deemed rate" to persons who purchased or renewed policies with the petitioner between January 22, 1988 and April 15, 1988. Their challenge of that portion of the Commissioner's order is not rendered moot as a result of their surrender of their certificates of authority to do insurance business in the Commonwealth.

Section 4(d) of the Act states:

> Subject to the exception specified in subsection (e) of this section, each filing shall be on file for a waiting period of thirty (30) days before it

---

zation, and, in doing so, violated Section 4(b) of the Act, 40 P.S. §1184(b).

(6) the Commissioner's disapproval of their rate filing constitutes discriminatory conduct; and

(7) the Commissioner's adjudication does not satisfy the requirements established by this Court in Nationwide Mutual Insurance Co. v. Denenberg, 15 Pa. Commonwealth Ct. 24, 324 A.2d 878 (1974), for adjudications in which rate filings are disapproved.

becomes effective, which period may be extended by the commissioner for an additional period not to exceed thirty (30) days upon written notice within such waiting period to the insurer or rating organization which made the filing. . . . A filing shall be deemed to meet the requirements of this Act and to become effective unless disapproved, as hereinafter provided, by the Commissioner within the waiting period or any extension thereof.

Meanwhile, Section 5(a) of the Act provides:

Upon the review at any time by the commissioner of a filing he shall, before issuing an order of disapproval, hold a hearing upon not less than ten (10) days written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, and if, after such hearing, he finds that such filing or a part thereof does not meet the requirements of this Act, he shall issue an order specifying in what respects he finds that it so fails, and stating when, within a reasonable period thereafter, such filing or a part thereof shall be deemed no longer effective if the filing or a part thereof has become effective under the provisions of section four; ... . ... *Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order*. (Emphasis added.)

In this case, the Commissioner failed to disapprove the petitioners' rate filing during the extended waiting period. She could have done so as long as, before doing so, she had held a hearing regarding the rate filing after not less than ten days written notice to the petitioners, as required by Section 5(a) of the Act. Because the Commis-

sioner did not disapprove the petitioners' rate filing within the extended waiting period, the petitioners, as of December 28, 1987, were able, pursuant to Section 4(d) of the Act, to collect the proposed higher premiums until April 15, 1988—the date as of which the Commissioner, after having satisfied the notice and hearing requirements of Section 5(a), effectively disapproved their rate filing.[5] The parties agree that, under the portion of Section 5(a) of the Act emphasized above, the Commissioner could not have thereafter ordered refunds of all excess premiums collected from customers who purchased or renewed policies while the disapproved rate increase was effective. The Insurance Department (Department) contends, however, that she could order refunds to those customers of that portion of the collected excess premiums that were earned after the effective date of disapproval.

The Department insists that the last sentence of Section 5(a) is ambiguous. It contends that the concluding phrase "prior to the expiration of the period set forth in the order" may be read to modify the verb "affect" as well as the verbs "made" and "issued", and we are urged to resolve this ambiguity in the policyholders' favor because it is presumed that the General Assembly intends to favor the public interest, 1 Pa. C. S. §1922(5); and does not intend a result that is absurd or unreasonable, 1 Pa. C. S. §1922(1), and enacted the Act for the express purpose of regulating insurance rates so that they are not excessive, 40 P.S. §1181. The Department would have us construe the last sentence in Section 5(a) so that it reads: "Said

---

[5] The fact that the Commissioner scheduled a hearing on petitioners' rate filing did not prevent the petitioners from implementing the proposed rate increase after the expiration of the extended waiting period, at which time that rate increase became effective by operation of law. *Nationwide Mutual Insurance Company v. Pennsylvania Insurance Department,* 104 Pa. Commonwealth Ct. 301, 522 A.2d 1167 (1987).

order shall not affect, prior to the expiration of the period set forth in said order, any contract or policy made or issued."

In the opinion of this court, however, the order of the words as they appear in the last sentence of Section 5(a) create no doubt. The phrase "prior to the expiration of the period set forth in said order" refers to and limits the verbs immediately preceding it, namely, "made" and "issued", thereby precluding the Commissioner from ordering the refunds. This interpretation is in accord with the rule of grammar known as the "last antecedent" rule. Under that rule, qualifying words or phrases are to be applied to the words immediately preceding them, but do not extend to or include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent or meaning of the context or disclosed by an examination of the entire act. *See Smiley v. Ohio Casualty Insurance Co.*, 309 Pa. Superior Ct. 247, 455 A.2d 142 (1983); *Buntz v. General American Life Insurance Co.*, 136 Pa. Superior Ct. 284, 7 A.2d 93 (1939).

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C. S. §1921. Here, the Department strains to find an ambiguity in the statute in question which would allow application of statutory construction principles to produce an equitable result for those consumers who purchased policies while the disapproved rates were effective. If, however, the statute produces an inequitable result for those consumers, it must be the legislature who corrects that inequity.

Accordingly, that portion of the Commissioner's order requiring the petitioners to return the premium difference between its rates deemed into effect January 22, 1988 and its previously approved rates for all premi-

ums earned after April 15, 1988, the effective date of the disapproval of the proposed rate increase, is hereby reversed.

ORDER

NOW, February 23, 1989, the order of the Insurance Commissioner dated March 31, 1988, as modified by a later order dated April 11, 1988, docketed at No. R87-12-16, is reversed insofar as it requires the petitioners to return the premium difference between its rates deemed into effect January 22, 1988 and its previously approved rates for all premium earned after April 15, 1988, the effective date of the disapproval of the deemed rate. The issues raised by the petitioners that relate to the disapproval of their October 18, 1987 rate filing are found to be moot as a result of their surrender of their certificates of authority to do business in the Commonwealth on October 27, 1988.