**In the Matter of SURCHARGE CLASSIFICATION 0133 BY the DELAWARE COMPENSATION RATING BUREAU, INC.**

Superior Court of Delaware,
New Castle County.

Submitted: June 2, 1994.

Decided: June 15, 1994.

**296**

Thomas P. Preston, and Bonnie L. Wolfgang, Duane, Morris & Heckscher, Wilmington, for Delaware Compensation Rating Bureau, Inc., appellant.

Calvin L. Scott, Jr., Deputy Atty. Gen., Dept. of Justice, Wilmington, for the Ins. Com'r of the State of Delaware, appellee.

Clark W. Furlow, Smith, Katzenstein and Furlow, Wilmington, for the American Ins. Ass'n, the Alliance of American Insurers and the Nat. Ass'n of Independent Insurers, amici curiae.

### OPINION

COOCH, Judge.

This is an appeal by the Delaware Compensation Rating Bureau, Inc. (DCRB) from a September 15, 1993 order of the Insurance Commissioner of the State of Delaware (the Commissioner) in which order the Commissioner determined that "Surcharge Classification 0133" ("the Surcharge") imposed on asbestos abatement companies by DCRB from April 11, 1988 to February 28, 1990 was unlawful, and which order also required DCRB to refund all premiums collected under the Surcharge for that period. On appeal, DCRB argues that the Commissioner lacked authority, on various legal and factual grounds, for the retroactive application of the September 15, 1993 order disallowing the Surcharge.

This Court concludes that the statutory scheme governing administrative rate-making set forth in 18 *Del.C.* ch. 25 prohibits the retroactive surcharge disallowance at issue here. Accordingly, the Court does not reach the other arguments raised by DCRB on appeal and, for the following reasons, this Court reverses the Commissioner's September 15, 1993 order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts necessary for the Court to decide this case are almost entirely undisputed.[1] DCRB is licensed pursuant to 18 *Del.C.* ch. 25 to file rates with the Commissioner on behalf of its approximately 270 member insurers who write worker's compensation insurance in Delaware. On April 1, 1985, DCRB submitted a rate filing with then Commissioner David N. Levinson, requesting an occupational disease surcharge on workers compensation insurance rates (the Surcharge) to be charged to employers engaged in the business of removing asbestos (Classification 0133), with an effective date of March

---

1. Since the Court's holding turns on an issue of law, the Court does not reach DCRB's argument that the Commissioner's decision was not supported by substantial evidence; a complete recitation of the facts in the record is thus unnecessary.

1, 1985, to apply on a new and on a renewal basis. On May 31, 1985, the rate application was stamped "Filed—May 29, 1985—David N. Levinson—Insurance Commissioner of Delaware" and returned to DCRB, which, understanding the Surcharge to have been approved, implemented it. Thereafter, the Surcharge was included in four subsequent annual rate filings of DCRB until February 1990 when, in response to the Commissioner's urging, it was replaced by a new classification which was approved by Commissioner on March 5, 1990.

### Events in Pennsylvania.

In the interim, certain events had occurred in Pennsylvania which affected the continuing approval of the Surcharge by the Commissioner. On April 23, 1985, the Pennsylvania Compensation Rating Bureau, Inc. (PCRB), which apparently is a related entity to DCRB, also adopted a surcharge based on the same Classification Code 0133 to be applied to contractors engaged in asbestos removal and encapsulment in Pennsylvania. PCRB began using the surcharge in 1985, despite the fact that the Pennsylvania Insurance Department had disapproved that surcharge; PCRB maintained that it understood the surcharge had been approved. On July 6, 1988, the Pennsylvania Insurance Commissioner determined that the surcharge was unlawful, having found that asbestos abatement workers do not face an abnormal disease exposure, and ordered PCRB to refund the amount of the surcharge retroactive to April 10, 1985. The present Insurance Commissioner of Delaware, Donna Lee H. Williams (who succeeded David N. Levinson as Insurance Commissioner in January 1993) asserts that Commissioner Levinson first became aware of the Pennsylvania Insurance Commissioner's action sometime in 1990 when he and his staff learned that the Pennsylvania Department of Insurance had issued its July 6, 1988 order instructing PCRB to cease and desist its use of the Surcharge.

### Subsequent Delaware procedural history.

The Delaware Department of Insurance (the Department) sought to have DCRB voluntarily refund all Surcharge premiums imposed, but DCRB and its member insurers

declined to do so, asserting that the Surcharge, having annually been approved since 1985 by the Commissioner, was lawful. Thereupon, the Department filed a complaint on September 6, 1990 with the Commissioner which alleged that DCRB had violated its responsibilities under Delaware law by filing and using the Surcharge; additionally, the Department sought to suspend DCRB's license and to impose fines on DCRB. A hearing was held, pursuant to the complaint, on October 26, 1990 before the Commissioner's hearing officer. On November 15, 1990, the Commissioner issued an order disapproving the Surcharge pursuant to 18 *Del.C.* § 2507. This was the first time Surcharge 0133 had ever been disapproved.

On March 28, 1991, the hearing officer submitted his Report and Recommendation regarding the October 26, 1990 hearing to the Commissioner who then, on July 1, 1991, ordered that DCRB: 1) report all Surcharges collected; 2) set up an escrow account into which an amount equal to all of the Surcharge premiums collected was to be placed; 3) file "New Rates" based on specified criteria which would then be applied retroactively; and 4) instruct DCRB member insurers to refund the difference between the Surcharge premiums collected and the new rates.

DCRB appealed this order to the Superior Court on July 12, 1991. This Court issued an order on August 13, 1991 staying the distribution of the funds collected by DCRB pending the appeal of the Surcharge refund issue and ordered the Commissioner to issue a separate order regarding the "New Rates." *In the Matter of Surcharge Classification 0133,* Del.Super., C.A. No. 91A–07–6–1–AP, Bifferato, J. (Aug. 13, 1991) (ORDER). The Commissioner complied and issued a new order to that effect. On August 30, 1991, DCRB filed the "New Rates," which in turn were disapproved by a further order of the Commissioner dated September 26, 1991, the Commissioner having found the newly submitted rates "excessive."

On April 8, 1992, another hearing was held before a hearing officer to consider the appropriateness of the Commissioner's September 26, 1991 order and the appropriateness of

the "New Rates." The hearing officer filed his Report and Recommendation on August 3, 1993, which recommended that DCRB be instructed to refund all premiums collected under Surcharge Classification 0133 from April 11, 1988 (the date on which PCRB withdrew its similar rates in Pennsylvania) to February 28, 1990 (the expiration date of the Surcharge). On September 15, 1993, Commissioner Williams issued an order declaring Surcharge 0133 unlawful as of April 11, 1988 through February 28, 1990, and retroactively ordered a refund of the premiums collected under the Surcharge during that period.[2]

On October 12, 1993, DCRB filed a timely appeal of the September 15, 1993 order with this Court. On November 24, 1993, this Court granted DCRB's motion to stay the Commissioner's September 15, 1993 order pending the determination of this appeal. On February 14, 1994, the American Insurance Association, the Alliance of American Insurers and the National Association of Independent Insurers, trade associations in the insurance industry, were permitted to intervene as *amici curiae* and to file a brief in support of DCRB's position and in opposition to the September 15, 1993 order.

## II. DISCUSSION

### A. The Contentions of the Parties.

DCRB cites three grounds for its appeal. First, DCRB asserts that both Article I, § 10 of the United States Constitution (the contract clause) and established principles of statutory construction prohibit the Commissioner's retroactive disapproval of the Surcharge; a corollary to this argument is that such retroactive disapproval is unfair and

upsets risk considerations taken into account at the time of the formation of insurance contracts. Second, DCRB argues that the Commissioner's September 15, 1993 order is unsupported by substantial evidence. Third, DCRB argues that available data supports the "New Rates" as filed by DCRB on August 30, 1991 that were subsequently disapproved by the Commissioner on September 26, 1991.[3]

The *amici* support DCRB's position that the Commissioner impermissibly ordered a retroactive surcharge refund and advance four reasons why the Commissioner's September 15, 1993 order should be reversed. First, they assert that this Court should reverse the order based on general insurance principles and public policy considerations of fairness in rate-making. Second, they claim that lawfully approved rates cannot be disapproved based on what they describe as "unrelated events" in other states. Third, they argue that the Fifth and Fourteenth Amendments to the United States Constitution prohibit the Commissioner's action in imposing the retroactive surcharge refund. Fourth, they argue that the contract clause of the United States Constitution prohibits such retroactive rate disallowance.

The Commissioner argues that her authority to order a retroactive refund of Surcharge Classification 0133 is implicitly authorized by 18 *Del.C.* ch. 25 and that such authority is not otherwise prevented by any federal or state constitutional prohibitions against *ex post facto* laws or impairment of contracts. The Commissioner further asserts that DCRB had a duty promptly to have disclosed any knowledge it had that the Pennsylvania

---

2. The Commissioner's September 15, 1993 order provides in pertinent part:

    1. The Delaware Compensation Rating Bureau shall immediately notify all insurers and insureds charged the surcharged rate for Code Classification 0133 that the said rate has been determined unlawful as of the date of withdrawal of the rate in the State of Pennsylvania, i.e. April 11, 1988 to February 28, 1990, by the Insurance Commissioner of the State of Delaware and that all insureds charged said rate are entitled to a refund of the surcharged amount.

    2. Within thirty (30) days of the date of this Order, the DCRB shall inform the Commis-

sioner, in writing, of the names and addresses of all insureds charged the surcharge rate for Code Classification 0133 and the total amount charged. All refunds shall be made within ninety (90) days of the date of this Order. *In the Matter of Surcharge on Classification 0133 by the Delaware Compensation Rating Bureau, Inc.*, Del.Ins.Comm., (Sept. 15, 1993) (ORDER) at 2, 3.

3. Since this Court finds that the Commissioner's September 15, 1993 order must be reversed due to an error of law, it need not reach the question of whether the "New Rates" were indeed supported by substantial evidence in the record.

surcharge had been disapproved by the Pennsylvania Insurance Commissioner on July 6, 1988, and that its failure to do so now "collaterally estops" DCRB from opposing the September 15, 1993 finding of the Delaware Insurance Commissioner that asbestos placement workers do not face an abnormal disease exposure.[4] The Commissioner further contends that she may legitimately consider relevant factors both within and outside of the state in connection with her approval or disapproval of insurance rates. Lastly, the Commissioner argues that the retroactive disapproval of Surcharge 0133 is reasonable and supported by substantial evidence in the record.

This Court concludes that, as a matter of statutory construction of 18 *Del.C.* ch. 25, the Commissioner lacked authority to have disapproved, retroactively, rates previously approved and for that reason, the September 15, 1993 order must be reversed. This Court thus does not reach the other issues raised by DCRB, the *amici* or the Commissioner.

### B. Standard of Review

■ This Court has jurisdiction to hear this appeal under the Administrative Procedures Act, 29 *Del.C.* § 10142. *See also Blue Cross & Blue Shield of Delaware, Inc. v. Elliott,* Del.Super., 449 A.2d 267, 270 (1982); *Del.App. Hbk,* § 20:10 (Supp.1990).[5] On ap-

peal from an order of the Commissioner, this Court's review is limited to a determination of whether there is substantial evidence in the record sufficient to support the Commissioner's findings and whether such findings are free from legal error and are the product of an orderly and logical deductive process. *See Quaker Hill Place v. State Human Relations,* Del.Super., 498 A.2d 175, 179 (1985), *aff'd Saville v. Quaker Hill Place,* Del.Supr., 531 A.2d 201 (1987). *See also Kreshtool v. Delmarva Power and Light Co.,* Del.Super., 310 A.2d 649, 652 (1973) (stating that "[r]eversal is warranted if the administrative agency exercises its power arbitrarily, or committed an error of law, or made findings of fact insupportable by substantial evidence"). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.... [it] is more than a scintilla but less than a preponderance." *Olney v. Cooch,* Del. Supr., 425 A.2d 610, 614 (1981).

### C. The Commissioner's September 15, 1993 order was unlawful in that 18 Del.C. ch. 25 does not authorize retroactive disapproval of insurance rates.

■ This Court reverses the September 15, 1993 order of the Insurance Commissioner because 18 *Del.C.* ch. 25 does not authorize, explicitly or implicitly, the retroactive

---

**4.** The Commissioner argues that DCRB should be "collaterally estopped" from challenging the September 15, 1993 order since, the Commissioner claims, it had a duty to inform the Delaware Insurance Commissioner of the 1988 Pennsylvania Insurance Commission's decision declaring the Surcharge unlawful but did not do so and relies on 18 *Del.C.* § 2511(c)'s requirement that a licensed rating organization such as DCRB be "competent" and "trustworthy." Since this Court has resolved the appeal solely on grounds of statutory construction, it need not reach this issue.

**5.** Twenty-nine *Del.C.* § 10142, effective July 1, 1976, supplanted the former appellate jurisdictional provisions of 18 *Del.C.* § 2531 which had previously vested the Court of Chancery with jurisdiction to review appealable decisions of the Insurance Commissioner. *Blue Cross & Blue Shield of Delaware, Inc. v. Elliott,* Del.Supr., 449 A.2d 267, 270 (1982). However, 19 *Del.C.* § 2620 (H.B. No. 241), enacted into law on July 16, 1993 (but effective October 16, 1993) now apparently vests the Court of Chancery again with jurisdiction over appeals brought under 19

*Del.C.* ch. 26 ("WORKMEN'S COMPENSATION RATING") and filed on or after October 16, 1993. 69 *Del.Laws,* c. 163.

This case, brought originally by the Commissioner under 18 *Del.C.* ch. 25 ("RATES AND RATING ORGANIZATIONS") is not governed by 19 *Del.C.* ch. 26 and in any event the instant appeal was filed on October 12, 1993, four days before 19 *Del.C.* § 2620 became effective. Therefore, the instant appeal was correctly taken to the Superior Court pursuant to 29 *Del.C.* § 10142. This Court thus need not decide whether the September 15, 1993 order of the Commissioner was an order "under this chapter [Title 19, Chapter 26]" nor does it speculate as to why new § 2620 provides that certain appeals from the Insurance Commissioner should now be taken to the Court of Chancery, a reversion to the pre–29 *Del.C.* § 10142 procedure. The Court further observes that H.B. No. 241 was apparently inadvertently enacted into Title 19 ("Labor") rather than into Title 18 ("Insurance Code") of the Delaware Code.

rate disapproval sought to be imposed by the Commissioner in that order.

### Statutory construction analysis.

The Commissioner argues that she has the statutory authority retroactively to order a Surcharge refund in this case and relies primarily on 18 *Del.C.* ch. 25, considered as a whole, to support this contention. The Commissioner asserts that 18 *Del.C.* §§ 2501, 2503(a)(2) and 2507, in particular, authorize the Commissioner retroactively to have disapproved the Surcharge as those statutes, "liberally interpreted," (§ 2501) place a duty on the Commissioner to ensure that "[r]ates shall not be excessive, inadequate or unfairly discriminatory" (§ 2503(a)(2)).

18 *Del.C.* § 2501 provides:

**§ 2501. Purpose of chapter; interpretation.**

The purpose of this chapter is to promote the public welfare by regulating insurance rates ... and to the end that they shall not be excessive, inadequate or unfairly discriminatory and to authorize and regulate cooperative action among insurers in rate making and in other matters within the scope of this chapter. Nothing in this chapter is intended (1) to prohibit or discourage reasonable competition, or (2) to prohibit, or encourage except to the extent necessary to accomplish the aforementioned purpose, uniformity in insurance rates, rating systems, rating plans or practices. This chapter shall be liberally interpreted to carry into effect this section.

18 *Del.C.* § 2503(a)(2) provides:

**§ 2503. Making of rates.**

(a) Rates shall be made in accordance with the following provisions:

... (2) Rates shall not be excessive, inadequate or unfairly discriminatory;

18 *Del.C.* § 2507 provides:

**§ 2507. Disapproval of filing.**

If within 30 days after a specific inland rate, a special surety or guaranty on a risk specially rated by a rating organization

subject to subsection (b) of § 2504 of this title has become effective, the Commissioner finds that such filing does not meet the requirements of this chapter, or if upon review of any other filing, the Commissioner finds that the same does not meet the requirements of this chapter, he shall specify the reason for his disapproval and state that a hearing will be granted within 20 days after request in writing by the insurer or rating organization which made such filing, issue an order specifying in what respects he finds that such filing fails to meet the requirements of this chapter and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Copies of the order shall be sent to every such insurer and rating organization. The order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order.

The Commissioner argues that Surcharge 0133 was "excessive" as of 1985 (the year the Surcharge was first approved by the Commissioner) and asserts that DCRB was on notice as of July 6, 1988 that the Pennsylvania Insurance Commissioner had disallowed a similar surcharge.[6] The Commissioner faults DCRB for not immediately bringing that event to the attention of the Delaware Insurance Commissioner. The Commissioner argues that implementation of the Surcharge was "excessive" and thus in violation of § 2503, since (at least as the Commissioner asserts) there is no evidence which demonstrates that asbestos removal contractors are more likely to contract asbestosis or any other asbestos-related disease because of asbestos removal work.

The Court need not reach the issue of whether the Surcharge was in fact excessive. The sole question needed to be addressed by this Court is whether the Commissioner could have lawfully issued her order of September 15, 1993 under the authority of 18 *Del.C.* ch. 25 retroactively disapproving a previously approved rate applicable to DCRB's insureds for the period April 11, 1988 through February 28, 1990.

---

**6.** The Commissioner is not prohibited from looking to the experience of other states when approving or disapproving rate applications. Eigh-

teen *Del.C.* § 2503(a)(3)(f) grants the Commissioner that authority. This, however, is not the dispositive issue before this Court.

DCRB and the *amici* vigorously contend that the Commissioner's rate making power, conferred pursuant to 18 *Del.C.* ch. 25, may be exercised prospectively only, in the absence of specific statutory authority. DCRB primarily relies on 18 *Del.C.* §§ 2504, 2506 and 2507, and the *amici* rely on broad arguments of public policy (discussed *infra* at p. 305 n. 11).

18 *Del.C.* § 2504 provides:

**§ 2504. Rate filings.**

(a) Every insurer shall file with the Commissioner ... every manual, minimum, class rate, rating schedule or rating plan and every other rating rule, and every modification of any of the foregoing which it proposes to use. Every such filing shall state the proposed effective date thereof, and shall indicate the character and extent of the coverage contemplated.

18 *Del.C.* § 2506 provides:

**§ 2506. Effective date of filing.**

(a) The Commissioner shall review filings as soon as reasonably possible after they have been made in order to determine whether they meet the requirements of this chapter. The filings shall be deemed to meet the requirements of this chapter unless disapproved by the Commissioner. . . .

### Procedure in Delaware as a "file and use" state.

DCRB contends (and the Commissioner does not dispute) that it filed the Surcharge in a proper procedural manner originally in 1985 as well as subsequently in its four annual rate filings through February 1990. DCRB also maintains, correctly, that once it made these filings (which were never "disapproved" by the Commissioner until November 15, 1990) it was required to use these rates, including the Surcharge, pursuant to 18 *Del.C.* § 2517, which states: "No insurer shall make or issue a contract or policy except in accordance with the filings which are in effect for the insurer as provided in this chapter . . . ." *Id.*

Importantly, § 2506 provides that rate filings by insurers shall be deemed to meet the requirements of Chapter 25 unless disap-proved by the Commissioner. Hence, Delaware is a "file and use" state, *Elliott v. Blue Cross & Blue Shield of Delaware, Inc.*, Del. Supr., 407 A.2d 524, 527 (1979), "mean[ing] that an insurer who files a new rate may use it *upon*, or within a self-designated time after filing, without the requirement of first obtaining approval from the Insurance Commissioner." *Id.* (emphasis in original).

In *Elliott*, an insurer had submitted rate filings with the Commissioner who thereupon denied the filed rate without holding a hearing. The *Elliott* court outlined the "file and use" rate procedure in Delaware:

Under this 'file and use' rate procedure, an insurer controls the effective date of a new rate filing. If an insurer files a proposed rate change sufficiently in advance of its proposed effective date so that the Commissioner has the necessary time to examine the filing and supporting documentation and to hold a hearing (if he believes the rate filing should be modified or rejected), there is no problem. However, the statute permits filings to be made by an insurer with an effective date which will not permit time for a hearing to be held prior to such effective date. The result is that if the new rate is later disallowed, the insurer has been permitted to charge an unlawful rate for a considerable period of time to the possible detriment of the public. Conversely, if the rate is not allowed until after a hearing, the insurer has been deprived of a right to use a lawful rate for an appreciable period of time.

Thus, it appears from § 2506 and § 2507 that the Legislature clearly opted for the former 'file and use' procedure when the Code and § 2507 were originally adopted in 1968.

*Id.* at 527–528 (footnote omitted). The Court recognized the fact that under Delaware's "file and use" system insurers will, on occasion, have been permitted to charge a rate that is ultimately disallowed. The Court stated that the Legislature opted for this alternative in 1968 and held that subsequent amendments to § 2507 did not change this fact. *Id.* at 528, 531.

The *Elliott* court held that the Commissioner was required to do the following when disapproving rates:

(1) issue an order specifying the reasons for his disapproval;

(2) state that a hearing will be granted within 20 days after written request for a hearing by the insurer; and

(3) state when, within a reasonable period *after* the entry of his order the disapproved rate shall no longer be effective, if it has previously gone into effect.

*Id.* at 530 (emphasis added). Thus, the *Elliott* court held that the "effective" date of disapproval of proposed rates must occur "after" the entry of the Commissioner's order of disapproval: "Thus, under [a 1971 amendment to § 2507] the order [disapproving new rates] *would be issued* preceding a hearing (rather than following it as prior to the amendment); *and* the insurer's rate filing ceases to be effective 'within a reasonable time thereafter'—which, again, appears to mean after the date of issue of the order." *Id.*

### Section 2507 is unambiguous and does not authorize retroactive rate disapproval.

The Court finds also that the last sentence of § 2507 supports a construction of 18 *Del.C.* ch. 25 that the Commissioner lacks authority retroactively to disallow previously approved rates. That sentence reads: "The order [of disapproval] shall not affect any contract or policy made or issued prior to the expiration of the period set forth in the order." That language, coupled with 1) the requirement elsewhere in § 2507 that a rate filing case may only be disallowed "within a reasonable period thereafter" and with 2) *Elliott*'s holding that the effective date of disapproval shall be "within a reasonable period" after

the order of disapproval compels the conclusion that rate filings in Delaware can only be disapproved prospectively.

Other courts, construing comparable statutes, have reached the same conclusion. Thus, the Commonwealth Court of Pennsylvania, in *John Hancock Property & Casualty Ins. Co. v. Commonwealth of Pennsylvania Ins. Dep't,* 123 Pa.Cmwlth. 578, 554 A.2d 618 (1989), interpreting a virtually identical sentence,[7] held that the applicable statutory language precluded the Pennsylvania Insurance Commissioner from ordering refunds of lawfully implemented rates which were subsequently disapproved by the Commissioner. That court held:

The phrase 'prior to the expiration of the period set forth in said order' refers to and limits the verbs immediately preceding it, namely, 'made' and 'issued', thereby precluding the Commissioner from ordering the refunds. The interpretation is in accord with the rule of grammar known as the 'last antecedent' rule. Under that rule, qualifying words or phrases are to be applied to the words immediately preceding them, but do not extend to or influence other words, phrases, or clauses more remote unless such extension or inclusion is clearly required by the intent or meaning or the context or disclosed by an examination or the entire act....

When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.... Here, the Department strains to find an ambiguity in the statute in question which would allow application of statutory construction principles to produce an equitable result for those consumers who purchased policies while the disapproved rates were effective.

---

7. Section 5(a) of the Surety Rate Regulatory Act of June 11, 1947, P.L. 538, as amended, 40 P.S. § 1181–1197, provided:

Upon the review at any time by the Commissioner of a filing he shall, before issuing an order of disapproval, hold a hearing upon not less than ten (10) days written notice, specifying the matters to be considered at such hearing, to every insurer and rating organization which made such filing, and if, after such hearing, he finds that such filing or a part

thereof does not meet the requirements of the Act, he shall issue an order specifying in what respects he finds that it so fails, and stating when, within a reasonable period thereafter, such filing or a part thereof shall be deemed no longer effective if the filing or apart thereof has become effective under the provisions of section four,.... *... Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order.* (Emphasis added).

If, however, the statute produces an inequitable result for those consumers, it must be the legislature who corrects that inequity.

*Id.* 554 A.2d at 621–622 (citations omitted). The *John Hancock* court reversed that portion of the Insurance Commissioner's order requiring the insurers to refund the portion of the premium reflecting a rate increase, where that rate had been legally implemented due to the Commissioner's failure to disapprove the rate within the statutory period.

Significantly, the *John Hancock* court did not find the sentence or the statute in question to be ambiguous and this Court similarly finds § 2507 unambiguous in its authorization of prospective only rate disapproval.[8] *John Hancock*'s logic and reasoning applies equally to the case at bar and supports the construction of 18 *Del.C.* ch. 25 that the Commissioner may not retroactively disallow a previously approved rate.

■■■ Established rules of statutory construction in Delaware additionally support this construction of 18 *Del.C.* ch. 25. The traditional rule in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985). Where a statute as a whole is unambiguous such that there is no reasonable doubt as to the meaning of the words used, then the Court's role is "limited to an application of the literal meaning of the words." *Id. See* Sutherland Stat. Const. § 41.04 (5th Ed.1993) (noting that it has been continuously reaffirmed that "[t]he rule is that statutes are prospective, and will not be construed to have retroactive operation unless the language employed in the enactment is so clear it will admit to no other construction"). This Court finds 18 *Del.C.* § 2507 to be unambiguous and therefore the Court is limited to a literal interpretation of the words in the statute. Where, as here, the words used in a statute are undefined, they should be given their ordinary common meaning. *Coastal Barge Corp.* 492 at 1245 (citing *Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S.Ct. 2204, 2207, 65 L.Ed.2d 144 (1980); *Moore v. Wilmington Housing Auth.*, Del. Supr., 619 A.2d 1166, 1173 (1993) (holding that unidentified terms in the Delaware Code must be construed according to their common and approved usage)).

Further support for the construction of § 2507 (and Chapter 25) announced in this opinion is seen by the effect of "thereafter" as it appears in § 2507. The common meaning of "thereafter" is "after the time last mentioned; after that; after that time; afterward; subsequently; thenceforth." *Black's Law Dictionary* 1478 (6th Ed.1990). It is not possible to read an implied authorization for retroactive rate disapproval given § 2507's requirement that the filing of a subsequently disapproved rate be given effect "thereafter" the date of the disapproval.

Finally, it should be noted that the last sentence of § 2507 strongly implies that the Commissioner must give insurers a reasonable amount of notice in advance of the rate becoming ineffective and that any contract or policies created prior to the last day of the notice period are not to be affected.

■■■ Although, as the Commissioner points out, § 2501 requires Chapter 25 to be "liberally interpreted," this Court holds that, in the absence of any statutory authorization for retroactive rate disapproval, the only reasonably possible interpretation of § 2507 and of 18 *Del.C.*, ch. 25 is that the Commissioner may only disapprove rates prospectively.[9]

---

**8.** This Court is aware that § 4(a) of the Surety Rate Regulatory Act of June 11, 1947, P.L. 538 *as amended*, 40 P.S. § 1181–1197 permits rates to automatically become effective if the Pennsylvania Commissioner has not disapproved the rates within 30 days; however, that statute is not unlike Delaware's 18 *Del.C.* § 2506, requiring that the filings shall be deemed to meet the requirements of the chapter unless disapproved by the Commissioner and that the Commissioner must review said rates within a reasonable time.

**9.** Where, however, a statute is ambiguous and its meaning may not be clearly ascertained, the Court must rely upon methods of statutory interpretation and construction to arrive at what the legislature meant. *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.*, Del.Supr., 492 A.2d 1242, 1246 (1985) (citing *Carper v. New Castle County Bd. of Ed.*, Del.Supr., 432 A.2d 1202, 1205 (1981)). Assuming *arguendo* that this Court were to find 18 *Del.C.* § 2507 ambiguous (as to whether retroactive disallowance of rates is permissible), the Court notes that Delaware also

The Commissioner relies on an isolated statement in a recent case, *Levinson v. Delaware Compensation Rating Bureau, Inc.*, Del.Supr., 616 A.2d 1182 (1992) as authority for her power to disapprove rates retroactively. The dispositive issue on appeal in *Levinson* was whether the parties had exhausted the administrative process; in the course of holding that the parties had not done so, the Supreme Court commented, in apparent *dicta*, "[h]owever, if the rate is ultimately disapproved, the insureds will receive credit for any excess rates charged." *Id.* at 1191.

The above language notwithstanding, *Levinson* cannot be said to stand for the proposition that 18 *Del.C.* § 2507 permits retroactive rate disapproval. First, *Levinson* was an exhaustion of administrative remedies case, and the issue of retroactive disapproval was not before the Court. Second, *Levinson* did not overrule or distinguish the holding of *Elliott v. Blue Cross & Blue Shield of Delaware, Inc.*, Del.Supr., 407 A.2d 524, 530 (1979) that the effective date of disapproval of proposed rates must occur "after" the entry of the Commissioner's order of disapproval. Third, the quoted language in *Levinson* may most reasonably be interpreted to mean that insureds will receive credit for any excess rates charged by insurers *after* the effective date of disapproval, which effective date will be "within a reasonable period *after* the entry of [the Commissioner's] order." *See id.* at 530. Fourth, as stated, the quoted statement is apparent *dicta*.

***"Specific statutory authorization" is required for retroactive rate disapproval.***

Other courts have required specific statutory authorization in order to permit retroactive rate making. Thus, in *Hamm v. Central States Health and Life Co. of Omaha*, 299 S.C. 500, 386 S.E.2d 250 (1989) it was held that the South Carolina Insurance Commissioner could retroactively disapprove a rate filing, but in *Hamm*, previously approved rates had then been timely appealed and found to be unlawfully established; *Hamm* held that the Commissioner otherwise could not, *absent statutory authorization*, order refunds where the Commissioner had approved a rate which is then placed into effect without challenge, only to have the Commissioner decide several years later that the rate was excessive. The *Hamm* court, confronted with similar facts and a similar statute, held that the Insurance Commissioner could not order retroactive refunds, absent statutory authorization, where: "(1) the Commissioner approves a rate; (2) the rate is placed into effect without challenge; (3) several years later, the Commissioner determines the rate is excessive and; (4) the Commissioner then wants to refund customers for the company's excessive aggregate underwriting profit." *Id.* 386 S.E.2d at 253–254. The Court held that this would be impermissible, as such action would constitute retroactive rate-making. *Id.*[10]

recognizes the "last antecedent rule" where the application of that rule does not alter the plain common sense meaning of the statute or result in statutory inconsistencies. *See John Hancock Property & Casualty Ins. Co. v. Commonwealth of Pennsylvania Ins. Dep't*, 123 Pa.Cmwlth. 578, 554 A.2d 618 (1989). Application of the "last antecedent rule" in this case results in a finding that the phrase "prior to the expiration of the period set forth in the order" refers to and limits the verbs "made" and "issued" immediately preceding it, thereby precluding the Commissioner's order from affecting insurance contracts made or issued prior to her September 15, 1993 order. *See Patton v. Simone*, Del.Super., C.A. No. 90C–JA–29, Herlihy, J., 1992 WL 183064 (June 25, 1992) Mem.Op. at 11 (stating that ordinarily qualifying words or phrases, where no contrary intention appears, usually relate to the last antecedent but noting that this rule of statutory construction is not inflexible). *See also Keddie v.*

*Delaware Violent Crimes Compensation Bd.*, Del.Super., C.A. No. 90A–09–001, Steele, J. (Sept. 19, 1991) (ORDER) at 3 (holding that the "last antecedent rule" should not be applied where to do so would lead to results logically inconsistent with the overall intent of the statute). *Cf. E.I. du Pont de Nemours & Co. v. Green*, Del.Supr., 411 A.2d 953, 956 (1980) (holding that the "last antecedent rule" is but one of numerous rules to assist in the discovery of legislative intent and is not to be uniformly or inflexibly applied).

**10.** Other courts are in accord. *See Associated Industries of Mass., Inc. v. Commissioner of Insurance*, 403 Mass. 37, 525 N.E.2d 670 (1988) (holding that insurance rate making is prospective in nature and retroactive adjustments to approved rates may not occur absent "specific statutory authorization"); *Anzinger v. Illinois State Medical Inter–Insurance Exchange*, 144 Ill. App.3d 719, 98 Ill.Dec. 533, 494 N.E.2d 655

It has been held in Delaware that "express legislative authority" is required before a retroactive utility rate application may be permitted. *Public Service Commission v. Diamond State Tel. Co.*, Del.Supr., 468 A.2d 1285, 1298 (1983) (holding that the utility rate-making process is "exclusively prospective" in its application and future rates may not be designed to recoup past losses in the absence of express legislative authority) (quoting *Transcontinental & Western Air, Inc. v. Civil Aeronautics Board*, 336 U.S. 601, 69 S.Ct. 756, 93 L.Ed. 911 (1949)). *See also Claridge Apartments Co. v. Commissioner of Internal Revenue*, 323 U.S. 141, 164, 65 S.Ct. 172, 185, 89 L.Ed. 139 (1944) (holding that "[r]etroactivity, even where permissible, is not favored, except upon the clearest mandate"). In the absence of specific statutory authorization, the Commissioner lacks authority to order retroactive rate disapproval.[11]

## III. CONCLUSION

This Court holds that 18 *Del.C.* ch. 25 does not authorize the Commissioner retroactively to refund premiums collected under rates that were previously approved and lawfully implemented. For the foregoing reasons, this Court finds that the Commissioner's September 15, 1993 order requiring the Delaware Compensation Rating Bureau, Inc.'s insureds to refund all Surcharge premiums collected between April 11, 1988 through February 28, 1990 was unlawful and is **REVERSED.**

**IT IS SO ORDERED.**

(1986) (holding that rate making operates prospectively only, although the Insurance Commissioner can, after a hearing, prohibit any future use) and *Caldwell v. Insurance Co. of North America*, 235 Ga. 141, 218 S.E.2d 754, 758 (1975) (holding that the Insurance Commissioner only had authority to prohibit the use of rates, not to order refunds of premiums previously collected pursuant to rates subsequently prohibited). *See also* Couch on Insurance 2d § 30:44 (Rev.Ed. 1984) (stating "[an] administrator's action will be reversed by the court where the insurance commissioner purports to establish a rate retroactively and to order the insurer to make a refund to the insured").

11. Although this Court has resolved this appeal based on principles of statutory construction, it should be noted that the policy arguments set forth by the *amici* support DCRB's position that insurance rates should be set prospectively only, and that any modification made to previously approved rates should also be effected only on a prospective basis. The strongest argument advanced by the *amici* is that insurers and insureds enter into a contract based on what they know

the premium rate to be (known as risk spreading). Thus, the *amici* argue, if the Commissioner is permitted to alter the rates after the fact, neither insurers nor insureds can be certain as to the terms of their agreement.

The *amici* also argue that if hindsight rate-making is allowed, the business of insurance and risk spreading will be too uncertain and too unpredictable to be effective or fair. The *amici* claim that, if this Court were to affirm the Commissioner's September 15, 1993 order there would be no finality to any of the Commissioner's decisions, and that if the rates been found inadequate (rather than "excessive"), the Commissioner would not have required policyholders to pay additional premiums retroactively for past coverage. The *amici* also point out that rates are set prospectively based on actuarial data and insurers and insureds alike must accept the benefit of their bargain regardless of the fact that in hindsight one party may have reaped more benefits than the other.

The Court finds the *amici* 's arguments persuasive and supportive of the Court's conclusion that 18 *Del.C.* ch. 25 empowers the Commissioner to order prospective rate disapproval only.