# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE        )
                                )
                                )
v.                           )     I.D. # 1705021865
                                )
SHANTELL NEWMAN,         )
                                )
Defendant.                )

Submitted: June 4, 2018
Decided: September 26, 2018

## Upon Defendant's Motion for Judgment of Acquittal:
## DENIED

This 26th day of September, 2018, upon consideration of the Motion for Judgment of Acquittal (the "Motion") filed on behalf of Shantell Newman, the record in this case, and the applicable legal authorities, including Rule 29 of the Superior Court Rules of Criminal Procedure ("Rule 29"), it appears to the Court that:

1.     Newman's Motion challenges the sufficiency of the evidence as well as the Court's ruling during trial that, in order to sustain a charge for possessing a firearm with a removed, obliterated, or altered serial number, the State is not required to establish the year the firearm was manufactured. The statute defining the offense contains three subsections; pertinently for this case, the first subsection defines the crime of knowingly possessing a firearm with a removed or obliterated serial number, and the second subsection provides that the statute does not apply to

firearms manufactured before 1973. Given the statute's unambiguous language and structure, as well as the fact that it criminalizes removal of a serial number, without which the State is unlikely to be able to prove the date of manufacture, I conclude the manufacture date is an affirmative defense for which a defendant bears the burden of proof. Accordingly, and because the evidence otherwise was sufficient to sustain the conviction, Newman's Motion is denied.

**FACTUAL BACKGROUND**

2.      At trial, the State presented evidence that New Castle County police executed a search warrant at a house believed to be Newman's residence. Police believed Newman resided there with Josiah Woody, who was indicted as Newman's co-defendant. Although neither Newman nor Woody was present when the search was conducted, Newman's children were there, and the State presented evidence that during the search police found recent mail addressed to each defendant.

3.      The house had two main stories and a basement. Detective Domenic Phillips of the New Castle County Police Department testified he found a handgun during the search of the house. The weapon was located on top of an air duct in the basement. Detective Phillips testified the firearm was within arm's reach and plainly visible when he walked three steps down the basement stairs. Pictures

2

admitted into evidence showed, and Detective Phillips' testimony confirmed, that the air duct was covered in dust, but the firearm was not dusty.

4. The firearm Detective Phillips found had tape around the handle and a filed-off serial number. Detective Phillips testified the filed-off serial number, which was located on the side of the gun, easily was noticeable to anyone who handled the firearm because there were several visible tool marks where the number was carved away. Photographs of the handgun confirmed the visible tool marks.

5. Detective Phillips testified he was able to restore the serial number on the handgun by using an acid wash. He then ran the restored number through the Bureau of Alcohol, Tobacco, Firearms, and Explosives' ("ATF") national database, but that search did not yield any information about the firearm. Detective Phillips testified that, in his experience, information about older guns, such as those manufactured in the 1960s, often is not contained in the ATF database.

6. New Castle County Police's evidence detection unit processed the handgun for DNA and fingerprints. Although no fingerprints were found on the gun, the State's DNA analyst testified that DNA mixtures were obtained from the handgun's trigger/trigger guard, cylinder, barrel, and grip, and those mixtures matched Newman's DNA sample, which was obtained from a buccal swab. The

3

analyst testified there was a 1 in 7 trillion probability that an unrelated individual in the general population would have the same DNA as that found on those areas of the gun. A DNA mixture also was obtained from the firearm's hammer and matched Newman's sample, although with a higher random match probability. The analyst explained that the DNA mixtures had at least two contributors, and Woody's DNA also matched the mixtures obtained from the trigger/trigger guard and hammer.

7. Newman and Woody were indicted on one count of Possession of a Weapon with a Removed, Obliterated or Altered Serial Number, and Woody also was indicted for Possession of a Firearm by a Person Prohibited and Possession of Ammunition by a Person Prohibited. The defendants were tried together on February 27-28, 2017. At the conclusion of the State's case, Newman's counsel made a motion for judgment of acquittal. Newman argued 11 *Del. C.* § 1459 – the section of the Delaware Code defining the offense of Possession of a Weapon with a Removed, Obliterated, or Altered Serial Number – provides that the section does not apply to a firearm manufactured before 1973, and the State therefore was required to prove the firearm's manufacture date as an element of the offense. The Court denied the motion for judgment of acquittal, concluding the date of manufacture was an affirmative defense. On February 28, 2017, the jury convicted Newman and Woody on all the indicted charges. At the conclusion of trial, the

4

Court granted Newman's counsel's request to extend by thirty days the deadline for post-trial motions for judgment of acquittal.

8. Newman now seeks judgment of acquittal on several alternative theories, namely that the State failed to adduce evidence from which a jury could conclude beyond a reasonable doubt that: (1) the firearm was manufactured in 1973 or later; (2) the firearm's serial number was defaced when Newman handled the gun; (3) the crime occurred within the five year statute of limitations; (4) Newman knew the serial number was obliterated; and (5) the firearm was altered in a manner that disguised or concealed its identity or origin.[1] The State asserts each of Newman's arguments fails on its merits, either because the State presented sufficient evidence to establish guilt beyond a reasonable doubt or because the contested element was not one on which the State carried the burden of proof.

## ANALYSIS

9. Under Rule 29, a defendant may move for judgment of acquittal to set aside a guilty verdict. In considering such a motion, all evidence and the legitimate inferences therefrom must be viewed in the light most favorable to the State.[2] If a rational jury could conclude from the evidence that the defendant is guilty beyond a reasonable doubt, the motion for acquittal shall be denied.[3]

---

[1] D.I. 20 ¶¶ 6-10.
[2] *State v. Biter*, 119 A.2d 894, 898 (Del. Super. 1955).
[3] *Jervey v. State*, 1994 WL 35386 (Del. Feb. 3, 1994)

10. The statute under which the State charged Newman, 11 *Del. C.* § 1459, provides in its entirety as follows:

> (a) No person shall knowingly transport, ship, possess or receive any firearm with the knowledge that the importer's or manufacturer's serial number has been removed, obliterated or altered in a manner that has disguised or concealed the identity or origin of the firearm.
>
> (b) This section shall not apply to a firearm manufactured prior to 1973.
>
> (c) Possessing, transporting, shipping or receiving a firearm with a removed, obliterated or altered serial number pursuant to this section is a class D felony.

In the indictment and at trial, the State alleged that on or about February 8, 2017, Newman and her co-defendant possessed a handgun with knowledge that the importer's or manufacturer's serial number had been removed, obliterated, or altered in a manner that disguised or concealed the identity or origin of the firearm. Newman concedes the DNA evidence presented by the State permitted the jury to conclude she knowingly possessed the firearm at some point before its seizure. Newman argues, however, that the State's evidence was insufficient in every other regard.

**A. The State was not required to prove the firearm's manufacture date in order to sustain the charge against Newman.**

11. Although sequentially last in the Motion, the focus of Newman's argument is a renewal of her contention at trial that the State was required by

6

Section 1459 to prove the firearm was manufactured in or after 1973. Newman's argument relies on Section 1459(b), which exempts from the statute any firearm manufactured before 1973. In denying Newman's motion for judgment of acquittal at trial, the Court reasoned that Section 1459(b) exempted from the statute's scope firearms manufactured before 1973, and the manufacture date therefore was an affirmative defense under 11 *Del. C.* § 305. Under Section 305, if a statute "specifically exempts" a person or activity from the statute's scope, and a defendant contends she falls within that exemption, the exemption is an affirmative defense. Applying Section 305, the Court concluded Section 1459(b) exempted the activity of possessing a firearm with an obliterated serial number if the firearm was manufactured before 1973, and the defendant therefore bore the burden of proving she fell within that exemption.

12.     Newman contends this ruling was in error, arguing Section 305 does not apply because Section 1459(b) does not exempt a class of persons or activities from the statute's application, but rather negates an element of the charge.[4] Newman argues affirmative defenses historically are confined to facts that "lie immediately within the knowledge of the defendant," and it would be unfair to classify a firearm's date of manufacture as an affirmative defense because

---

[4] D.I. 20 ¶ 10.

"requiring a private citizen to prove a distantly remote date of manufacture by a preponderance of the evidence is neither practical nor fair."[5]

13. Newman does not explain how the date of a firearm's manufacture "negates an element of the charge" of Possession of a Weapon with a Removed, Obliterated, or Altered Serial Number.[6] The argument runs contrary to logic, Section 305, and Delaware law regarding the interpretation of statutory burdens of proof. First, Section 1459 criminalizes possession of a firearm whose serial number has been removed, obliterated, or altered. The very nature of the crime – removal or alteration of a serial number – makes it difficult, if not impossible, for the State to obtain information about the firearm, including its date of manufacture. It would be illogical for the General Assembly to criminalize conduct that makes tracing a firearm difficult or impossible, while simultaneously requiring the State to trace the firearm in order to carry its burden of proof.

14. Second, Section 1459(b) expressly creates a class of firearms for which the *activity* of possessing a firearm with a removed, obliterated, or altered serial number is not a crime. This exception does not negate an element of the charge because the date of manufacture does not disprove possession, knowledge, or the fact that the serial number was removed, obliterated, or altered. Rather, the

---

[5] D.I. 20 ¶ 11.
[6] *See Patterson v. New York*, 432 U.S. 197, 206-07 (1977) (describing an affirmative defense as one that "does not serve to negative any facts of the crime"). Newman's argument seems to assume that the date of manufacture is an element of the charge, which is circular at best.

manufacture date is offered as excuse for a defendant's possession of an otherwise illegal firearm. Under the plain language of Section 305, this exemption of a certain class of firearms from the scope of the statute is an affirmative defense. That interpretation also is consistent with Delaware and federal precedent to the effect that a party who relies on a statutory exception contained in a "proviso or distinct clause" bears the burden of showing that the party falls within that exception.[7] Under Delaware law, "where the exception or qualification occurs in the enacting clause, or in the same section, or in a preceding section," the plaintiff must show the defendant's conduct is not within the exception, but "where the exception is contained in a proviso, in a subsequent section or statute," it is a defense.[8]

15. The conclusion that Section 1459(b) is an affirmative defense also is consistent with federal case law interpreting a similar exemption in a federal statute. Various federal laws regulate the interstate movement of firearms.[9] 18 U.S.C. § 921(a)(3) defines "firearm," and the last sentence of that subsection states "such term does not include an antique firearm."[10] The United States Circuit courts that have considered the issue unanimously have concluded that proof that a firearm is not an antique is an affirmative defense and not an element the

---

[7] *U.S. v. Guess*, 629 F.2d 573, 576 (9th Cir. 1980)

[8] *Socum v. State*, 6 Del. (1 Houst.) 204, 208 (Super. 1856); *see also Trustees of New Castle Common v. Stevenson*, 6 Del. (1 Houst.) 451, 452-53 (Super. 1857).

[9] 34 U.S.C §§10101, *et seq.*

[10] Antique firearm separately is defined. *See* 18 U.S.C. § 921(a)(16).

9

government must prove to obtain a conviction under federal law.[11] Those courts have reasoned that "proof establishing that [firearms] were antiques within the meaning of [Section 921] would not negative any of the government's proof. By its terms, the statute creates an affirmative defense in the form of an exception."[12] For purposes of interpreting the State's burden of proof, there is no discernible difference between the federal statute's exemption for antique firearms and Section 1459(b)'s exemption of firearms manufactured before 1973. Like Section 921(a)(3), Section 1459(b) creates an exception to conduct that otherwise is criminal. Accordingly, the State was not required to prove the firearm's manufacture date.

## B. The State's evidence was sufficient to allow a reasonable jury to find Newman guilty beyond a reasonable doubt.

16. In addition to her legal argument regarding the meaning of Section 1459(b), Newman also challenges the sufficiency of the State's evidence on several other bases. Newman first argues "[t]he State failed to prove beyond a reasonable doubt that the weapon had been defaced at the time Newman touched or handled the gun."[13] Newman contends the DNA evidence did not provide the jury any basis to determine (i) when Newman possessed the gun or (ii) that the gun's

---

[11] *U.S. v. Lawrence*, 349 F.3d 109, 123 (3d Cir. 2003); *U.S. v. Smith*, 981 F.2d 887, 891-92 (6th Cir. 1992); *U.S. v. Laroche*, 723 F.2d 1541, 1543 (11th Cir. 1984); *U.S. v. Mayo*, 705 F.2d 62, 73-76 (2d Cir. 1983).
[12] *Mayo*, 705 F.2d at 75.
[13] D.I. 20 at ¶ 6.

serial number was obliterated at the time she handled the gun. This argument both mischaracterizes the definition of possession and ignores evidence presented to the jury.

17. In order to meet its burden, the State was not required to prove Newman "handled" the gun on or about February 8, 2017. The State was required to prove that she "possessed" the gun on or around that date, and – as the Court instructed the jury – possession in the context of this charge included both actual and constructive possession. As the Court explained to the jury, in order to prove constructive possession, the State was required to prove that Newman (1) knew the gun's location, (2) had the ability to exercise dominion and control over the gun, and (3) intended to exercise dominion or control over the gun.[14] Constructive possession may be proved by circumstantial evidence, and the State need not prove that a person was in possession of the weapon at the time of their arrest.[15]

18. Newman's argument that the State did not prove when Newman's DNA was transferred to the gun falsely implies the State was required to prove physical possession. The State neither attempted nor was required to do so; evidence that Newman's DNA matched the DNA on the gun permitted an inference that she knew of the gun's existence because she had handled it in the past. Here, in addition to Newman's DNA being found on several locations on the

---

[14] *Elmore v. State*, 2015 WL 3613557, at * 2 (Del. June 9, 2015).
[15] *Id.*

11

firearm, the State presented evidence that Newman lived in the residence with her children, the gun plainly was visible to anyone who walked three steps into the basement, and the gun's placement in that location appeared to be recent based on the presence of dust on the air duct but not on the gun. The State also presented evidence in the form of photographs and testimony that the tool marks that obliterated the serial number were located on the side of the gun and immediately were noticeable to anyone who handled it. That evidence was sufficient to allow the jury to conclude beyond a reasonable doubt that Newman constructively possessed the gun on or around February 8, 2017, and that the serial number was filed off at the time of that possession. That conclusion also addresses and disposes of Newman's argument that the State did not establish the crime was committed within the five year statute of limitations.

19. Newman also contends the State failed to prove she knew the serial number on the gun had been obliterated. Section 1459 required the State to prove that Newman possessed the firearm with knowledge that its serial number was removed, obliterated, or altered. The State presented at trial sufficient evidence to allow the jury to conclude beyond a reasonable doubt that Newman possessed the requisite level of *scienter*. As explained above, the gun was visible and easily accessible in Newman's home, and the tool marks that filed off the serial number readily were apparent to anyone who handled the gun. Newman's DNA was found

12

in several places on the gun, permitting a reasonable inference that she had more than incidental contact with it. The gun appeared to have been placed on the air duct recently. Although circumstantial, that evidence was sufficient to support the jury's guilty verdict, including on the state of mind element of the offense.

20. Finally, Newman argues "there was no evidence that the altered number on the weapon was 'in a manner that disguised or concealed the identity or origin of the weapon.'"[16] Newman contends the State did not present evidence that "the tool marks" on the gun concealed the gun's identity or origin.[17] This argument misinterprets Section 1459 and misconstrues the evidence. First, Section 1459 requires the State to prove that the serial number was "removed, obliterated or altered in a manner that has disguised or concealed the identity or origin of the firearm."[18] According that language its plain meaning, the State must prove the serial number was (i) removed, or (ii) obliterated, or (iii) altered in a manner that concealed its identity or origin. It would be nonsensical to interpret the statute as requiring proof that the "manner" of removal or obliteration concealed the handgun's origin or identity. The fact a serial number was removed or obliterated is sufficient under that statute. The conclusion that the phrase "in a manner that has disguised or concealed the identity or origin of the firearm" only modifies the

---

[16] D.I. 20 ¶ 9.
[17] D.I. 20 ¶ 9.
[18] 11 *Del. C.* § 1459(a).

term "altered" also is consistent with settled principles of statutory construction, particularly the "last antecedent rule," which provides that a limiting clause ordinarily should be read as modifying "only the noun or phrase that it immediately follows."[19] Here, the evidence supported a conclusion that the serial number was removed or obliterated. The State presented evidence at trial that all but one digit on the hangun's serial number was filed off and could not be discerned until it was restored by an acid wash. That evidence was sufficient to allow a jury to conclude the serial number was removed or obliterated.

For all the foregoing reasons, Shantell Newman's Motion for Judgment of Acquittal is **DENIED. IT IS SO ORDERED**.

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:     Domenic Carrera, Jr., Deputy Attorney General
        Robert M. Goff, Esquire
        Matthew Buckworth, Esquire (counsel for Co-Defendant Josiah Woody)

---

[19] *Dunfee v. KGL Holdings Riverfront, LLC*, 2016 WL 6988791, at * 5 (Del. Super. Nov. 23, 2016) (citing *United States v. Hayes*, 555 U.S. 415, 425 (2009)); *Matter of Surcharge Classification 0113 By Delaware Compensation Rating Bureau, Inc.*, 655 A.2d 295, 303 n.9 (Del. Super. 1994).